May it please the Court, good morning, Stephen Kent for Appellant Starr Insurance. There's four reasons why there was an error by the District Court in granting summary judgment. The first one is, Your Honor, they did not recognize that defendant's signature had the burden of establishing apparent authority. Throughout the opinion... What case says that the defendant had the burden of establishing apparent authority? What case are you relying on? I cited it in my brief. I don't have that in my head, Your Honor. But it's well established that the party asserting apparent authority has a burden of proof. And so if that's the case, it's your argument that that was not established, apparent authority was not established? Right, because the signature never produced any employee, no witness, who said, I reasonably relied on this. No employee was ever identified. We sent written discovery. We took every employee's deposition. We asked, who made the decision to rely on the alleged apparent authority? And what did you rely on? Nothing. We took every single identified signature employee's deposition and asked that same question. But there's no case that says that an individual employee has to be identified as the one who relied on apparent authority? I don't agree, Your Honor. The standard is they have to prove their reliance. Okay, I agree with you on the burden of proof.  But the question is the specificity of what they have to prove. They have to prove this individual by name is the one who had the reasonable belief in the apparent authority? That's my second point. The other thing that the court didn't do, they didn't apply Anderson v. Liberty lobby, which is I'm entitled to reasonable inferences. If there's no person identified and no person comes and says this was what I relied on and this is why it's reasonable, then they can't prove their case. And their summary judgment was inappropriate. But what case says that there has to be a specifically identified individual who relied on the apparent authority? Can't we look at the totality of the circumstances to determine whether or not there's reasonable reliance on it? Apparently they relied on it. You know, no, Your Honor. We can't not have evidence to support a key element of a claim. Okay. And what the element, what case says that there has to be an identified individual that relied on, that you have to specify the individual that said they relied on the apparent authority? If they, if, the reason I'm asking this is because if someone signs to give, to get gas or to get refueling and they give the gas and give the refueling, isn't that reliance on the signature? No, Your Honor. There's more than just we don't have a person. We have nothing. We have no one or nothing saying I relied on anything. We don't know who filled out the landing cart. We don't know where that information came. We have no person saying I saw the pilot, he signed this. But is there a dispute about whether the pilot signed the card? There's not a dispute about that. Okay. But there's a dispute about their reasonable reliance. And their reasonable reliance is a jury question. It's a fact question that we're entitled to have a jury decide. And the facts are all over the board on that. And a key part of analyzing whether there's a factual issue is if there is no evidence. In this case, for the signature, it's got holes all over the place because they don't know who did what. What are your other three arguments if we don't find your lack of specific employee identification persuasive? What are your other three? The court below concluded that there were no factual disputes, and that's not accurate. We have all of the evidence about signatures, failure to identify an employee, or failure to identify where the information came from, failure to indicate. What information? Information on the landing card. The landing card, you'll recall, does not have the principal's name on it. It has a different name. The pilot said, yes, gas and lavatory services. You're saying there's a dispute as to who approved fueling and lavatory services? No, the landing card that has the limitation of liability does not identify the principal. But there was only one card signed. Is that correct? Yes. It has a different entity involved. And if you go back to the reliance, the signature has to prove reliance, and it was reasonable, and thus there was a contract. The principal's name is not on the contract. Is there any dispute regarding who was on the plane, who was flying on the plane? Was there any dispute about that? Yes. The only pilot's deposition that was taken was Mr. Troncone, and he could not recall if he was the pilot in command or the co-pilot. But who had engaged the services. Was there any dispute about who engaged the services? What was the dispute about? That's an important distinction, in that the circumstances of this case are somewhat unusual, in that the owner of the airplane, 6206 LLC, had just purchased the airplane. They had not hired a manager of the airplane. They were looking for a manager. So during that interim time period, a friend of a friend started trying to find pilots to fly this airplane. So the owner of the airplane had nothing to do with selection of the pilot. But that doesn't matter, does it? If we assume that the owner of the airplane was Mr. Marino, and the FAA registration number is on the landing card, and GLF air is on the landing card, and Marino was a passenger on the flight, why is there an issue of fact regarding the identity of the entity that leased the plane? Because they can't create a contract or enforce a contract when a party isn't on the contract. And the other thing is the problem with that is, to me, is that when Mr. Marino reached the airport, he left the premises and left the pilot to take care of the details. No, he didn't. That's not the evidence. Well, the evidence says that he got into a limo and left. So what's your version of the evidence? The evidence is he did not hire the pilot. He had no contact with the pilot. He had no knowledge of what the pilot was going to do. So who engaged the pilot? What entity engaged the pilot? Mr. Young engaged it. And what is Mr. Young's connection to Mr. Marino? He was helping Mr. Marino find pilots while he was looking for a manager of the aircraft. So he was acting as an agent for Mr. Marino. There's no evidence of that. And he indicated I was just helping a friend. I was not the entity's manager. So no. Okay. To survive summary judgment, you need to find a material factual dispute, not just any factual dispute. And in this case, isn't the material factual dispute is the scope of the authority? Let's say we assume there is some apparent authority for at least laboratory services and 290 gallons of fuel, which is what's written on the landing card. Let's say there's apparent authority for Troncone, the pilot, to give authority for those two services. But there's a dispute of material fact as to whether that scope of authority includes signing a limitation of liability provision, which there's evidence in the record says that that is not common in the industry and only signature fixed-based operation requires pilots to give up that liability. Exactly. Correct. So that's the factual material dispute. So I'm not sure why you're spending so much time on these other disputes that may not be as material. Well, I think they're material on the reasonableness issue. The signature has to prove reasonableness, and that's highly disputed, and that's also a jury question. Okay, but let me ask you something. Are you claiming that Troncone didn't have the apparent authority to agree to fueling the 290 gallons that's on this and the lavatory? I mean, even his own testimony says that that was a check-in form with the tail number, what services I needed. I see here that fuel is marked and lav services probably asked me for my phone number in case they needed to reach me for anything and then had me sign it. So are you saying there wasn't even apparent authority for lavatory services and fuel? Yes, because of the unique circumstances under which this occurred, where the owner had no communication with this person and the pilot had no communication with the owner. And two things are missing. One is the owner did not have knowledge of what the pilot was going to do, and the pilot had no knowledge of the owner. Those are key, and there's no representation. So this is a trespass to Shattles, then. This is a trespass to Shattles. Signature fix-based operation has no authority to even have that Learjet. They have no authority to provide fueling services. They have no authority whatsoever. Then this is just a trespass to Shattles case. They were unlawfully having that Learjet because no one was authorized to have that Learjet there.  Is that right? The issue is did they have authority to sign a legal release?  Well, the problem is that's part of the contract. And if you authorize someone to sign a contract, then you can't say that they can only sign Clause 1, Clause 2, and Clause 5. If they're authorized to sign the contract, then the person who authorizes them or gives them apparent authority to sign it is bound by what they sign. That's not right. The Goldstein v. Hanna case, Your Honor, and the Ellis v. Nelson case discuss that apparent authority isn't unlimited. It's limited to what the principle said, and that's another issue in this case. It's a factual and legal issue that the owner, the principle, did not represent anything to the party who's seeking to assert apparent authority. What were those two cases, Goldstein and what? Goldstein v. Hanna and Ellis v. Nelson talk about the scope of authority in apparent authority, and it is not unlimited as the signature claims. I'd like to reserve some time. All right. Did you cite those cases in your brief? Yes, both parties cited those cases. They're important because they talk about the scope of apparent agent's authority, and it is not unlimited. Just because this person has apparent authority doesn't mean they can do anything, and it goes to your point, Judge Koh. But my point was specifically if you authorize someone to sign a contract, is it your argument that they can't sign all of the provisions in the contract but some? If you have a case that says that, I'd like to hear it, and you can do that on rebuttal. No, it's what Judge Koh said. This is a scope of authority case. But that's why I'm asking you what case says that. If there's apparent authority, specifically, if there's apparent authority to sign a contract, what case says that that authority is limited to only certain provisions in the contract? Let's see. It was the... What about Ellis v. Nelson? Whether a third party's reliance on such authority is reasonable turns on industry customs. That's true. And the testimony here was that industry custom does not include the limited liability provision. Right. But it does include catering, laboratory services, fueling, and the like.  So that's why this turns on industry custom, correct? Correct. And Ellis just says this agent exceeded his authority. And there's other cases... You're saying that the agent did have authority. It was just exceeded. Well, I don't know. I don't agree with that, Your Honor, but... That's what you just said. No, I don't agree that this agent had authority because of the unique circumstances. The principal did not know this agent. The agent didn't know the principal. They never had any conversation. There was no representation to Signature about anything. So how can there be an agency created? All right. Thank you, counsel. Thank you. May it please the Court? Mike Brownlee. I'm here on behalf of the Appalachian Signature. I think the Court is asking the right questions. And the district court's order was extensive. It was thorough. I think it was well-reasoned. And I don't have a ton to add. Well, could you start with the questions that were raised by Judge Koh regarding the scope of the authority and the industry practice? Sure. I know there was some testimony that it's not an industry standard to have that kind of term in a landing guard. But it is 100% industry standard to sign a landing guard. And this is a one-page document. Right. But wasn't it your burden, since you're asserting this apparent authority, wasn't it your burden to show that that industry custom included the limited liability provision? No, Your Honor, I don't believe so. Our burden was to show that this pilot had authority to sign this landing guard, which he unquestionably did. And once they're – No, but your burden is to prove that you have a subjective belief that is objectively reasonable that this pilot had apparent authority to sign that limited liability provision. And that all turns on industry custom. Sure. I think that's right, but Your Honor – Right. So what is your evidence of industry custom that a landing guard includes the limited liability provision? Because I don't see it in the record. And it's at a minimum a factual question because the existence of apparent authority is a question of fact. The reasonable reliance on such authority is a question of fact. Well, there are plenty of cases that we cited in the briefing that says once an agent is imbued with apparent agency, once someone is an agent, that they're responsible. Okay. So did Mr. Trancone have the ability to sign provision 8 of that landing guard that says you hand over – you are selling the Learjet to signature fixed-base operation? He didn't have that authority, correct? Correct. Okay. So there are clearly limitations on the scope of his authority, correct? Of course.  What defines those limitations? It's industry custom, correct? Correct, Your Honor, but think about – So what's the evidence of industry custom that a pilot is authorized to give a limited liability waiver in a landing guard? I don't think our burden is to prove that there's a boilerplate agreement that's consistent with every other FBO in the nation. I mean, we're allowed to include terms in a one-page agreement. And there was testimony from even the pilots on our opponent's side that said they often will cross that provision out. They will often not sign the landing guard because any human who gets a one-page document and is asked to sign it has to read those terms. And I think, you know, relying on industry standards to reverse in this case. Let's look at Leonardo Gomez.  Is it typical and customary that landing guards are signed by pilots of the airplanes? Yes, because this footnote doesn't exist. And he's talking about the limited liability provision. Right? So that, you know, and then let's look at Mr. Young. Yes. He said... He says, I imagine you've been dealing with signature flight support for about as long, right? That's about right. You would agree with me that signing landing cards at signature flight support is part of the ordinary, normal course of business for pilots flying into that FBO, correct? No, I don't because of this language right here. I mean, this is when we stop signing the cards. There's a lot of evidence that is not industry practice for pilots to be waiving the liability provision on behalf of an owner. I agree with you. So why is this not at a minimum a question of fact that should go to a jury? This is motion for summary judgment. How can you find as a matter of law, which is what this district court did, as a matter of law that this factual question is resolved? Because I think to reverse on the basis of industry standards, there's no way to do that without saying that the age-old premise that when you sign a contract, you're responsible for reading each term of that contract. This is not a 16-, 17-page agreement. It is one page, and this pilot, this specific pilot, had landed at signature FBOs over 50 times and signed these landing cards. I mean, we've got to be able to rely on a signature from someone authorized to sign an agreement, to read the terms, and as other pilots testified in this case, to not agree if they don't like that term. They can call the owner. They can call the representative. They can say no. There are a million different things they can do, but what they can't do is sign something and say, well, I didn't read it. That's not, that is. Well, what you all are not supposed to do is not push another plane into this Learjet, which caused the accident, which is why we're here in the first place, right? Well, of course, yeah. I mean, the question here is this is summary judgment. It's a question of fact, apparent authority. The reasonable reliance is a question of fact. Why isn't there a single material, genuine issue of fact here? That should go to a jury. Because the sufficiency of the evidence to get it to a jury is a question of law, and the evidence was insufficient to send this to the jury because he was unquestionably an agent, either actual or apparent agency. And keep in mind, Your Honors, there's an FAA regulation that says 14 CFR 161.5, an aircraft operator has authority to enter into agreements with the airport operator regarding use of the airport by an aircraft. I mean, this is a one-page document. We've got to be able to rely on humans to read the document and agree to a term. And, again, all these other pilots testified they often don't, and that's okay. I mean, but you can't just, you can't sign it and then later come back and say, well, I didn't read it. And to reverse on the basis of industry standards, I think that eats the, you know, that's sort of like the exception swallowing.  That's the law. That's what I'm really confused about. A defendant must prove subjective belief is objectively reasonable, which turns on industry custom and whether Signature reasonably believed that Troncone was acting within the scope of his apparent authority. And all of those are fact questions. But, counsel, the industry standard is that the pilots did view these contracts. Some accepted it. Some didn't. So the industry standard is that this is presented. For this particular flight support company, it's presented to pilots. And sometimes pilots sign it. Sometimes they don't. Sometimes they cross it out. So the industry standard is not that it's not presented. The industry standard is that it's presented and pilots deal with it in different ways. Correct. But where is it presented? Only at this Signature FBO in, is this Las Vegas? This is Las Vegas, right? Correct. There was no evidence that any other FBO has this limited liability provision in their card. I don't want to say this is gospel, but I do think that the Signature representative testified that this is used at other Signature FBOs. In other locations. Just this defendant. I'm sorry. No other fixed base operation owner has this limited liability provision in its landing card other than Signature. Correct. Some don't even require landing cards at all. But to say that one FBO, a private company, cannot include a term that is, I mean, this isn't you get a unicorn if you sign here. This isn't some crazy, this is if you want. Right, but you're relying on a parent authority. So that's why this is, yes, you can do it. But then you can't rely on a parent authority unless you can meet your burden of proof that this is industry custom. I don't, yeah. Right? And that you have, I don't see this to me, a parent authority is a question of fact. Third party reasonable reliance on the authority is a question of fact. I don't see how this can be resolved as a matter of law on this record. Again, as Judge Rollinson said, I think just, we have to be careful. What is industry standard? I mean, an FBO, a private company, has to be able to come up with a simple agreement to present. And, again, you can cross it out. You cannot agree. That's the prerogative of the pilot, of the agent that's imbued with the authority to sign that agreement, which happens all over the country. So we, I think. So what is the difference between, you just said that Troncone did not have the authority to sell the Learjet to Signature, correct? So what determines the scope of authority then? He can't sell it, but he can waive liability. Because that would be. Where's the dividing line? Because that's a crazy thing. That would be a, I mean, that would be a completely. Well, the contract, for one thing, there wasn't a contract to sell the plane. Correct. The contract was for landing services.  And so that's what we're looking at here is the contract for landing services and whether or not there was a parent authority to sign that. I don't think there was any argument that he had a parent authority to sell the plane.  And, Your Honor, this isn't some exculpatory clause, you know, gotcha clause. We paid for the repairs. It's about incidental damages and not being on the hook for things like a replacement aircraft, which is a very different. I mean, it's. You mean the airplane that Marino had to rent while his Learjet was being repaired. Correct. From being hit by another parked plane at your fixed base operation. Correct. So I would just, I would argue, Your Honor, that we've there, you know, it is basic contract law that if someone has authority to sign an agreement, they have to read the agreement. And this is a one page document. There's plenty of testimony in this case that people refused to sign it or crossed out that specific provision. So it was well known even to the pilots involved in this case. And so for this pilot to not be held accountable for signing that document just because some other FBOs don't include this provision to me is. So why would you agree to pay for repairing the Learjet, but just not for the rental? Like if you have a car accident, car insurances usually do give you a rental car while your car is being repaired. Usually you all hit this plane with another plane. They were all parked. They were all in your possession and control. And you're saying we'll pay for the repairs, but we're not going to pay for whatever plane you had to use in the interim while your plane was being fixed because we damaged it. Well, sure. But that's the prerogative of the FBO. It was a contract. That was the contract provision. Yes, ma'am. Where is that in the landing agreement? Just tell me where that. I'm sorry. Which provision it is in the landing? Sorry, which provision? The incidental damages. It's fine. It's fine. It's the fourth note. Thank you. Unless the court has any more questions, I'll take my leave. Thank you, counsel. Thank you. On the scope of authority, their only case the signature cited was Nevada National Vultures Gold Storm, which is where a bank employee represented to someone that another person was a good credit risk. That case does not stand for the proposition that if there's apparent authority, it's unlimited authority. All of the cases, including the Ellis case that we were discussing and the Goldstein case, address the fact that the apparent authority is limited in scope to what the principal acquiesces to. And that's why the industry custom is important. In this case, what did the principal acquiesce to if he didn't contact the pilot at all, if he didn't give the pilot any directions at all? What did he acquiesce to? Well, I think the argument is that he acquiesced to signing the landing card, but the problem with that is it goes back to what is the industry custom? The industry custom is that you're going to fuel the plane, put water in, and so forth. The industry custom is not to sign legal documents. I thought the pilots testified that they commonly signed the landing cards. It just didn't necessarily have this language on it. That is disputed. That's a factual issue. The pilots testified that some people don't have landing cards. Some have landing cards. If they do have landing cards, pilots signed them, right? They said it depends on how controlling the owner is. So it's all a disputed issue of fact. So there is no industry practice then? If it's all over the place, it can't be a practice. There's no practice. There's different things that happen under different circumstances. One last thing, Your Honor. This is not an equitable estoppel case because equitable estoppel in the context of apparent authority requires an unconscionable injury, and that's not the case here. Signature ran two planes into each other, causing damage. That's not an equitable estoppel application that should be used. And the other thing that is disputed is what pilots do when they're confronted with the landing card. The testimony was that this was a new development, that this footnote was just recently added, and the pilots are, like, learning about this. It goes back to what does the principal acquiesce to? The principal has to have knowledge to acquiesce. If you look at the restatement, you look at the cited cases, a part of establishing apparent agency is what was the knowledge of the principal, and what did the principal do that a party asserting the apparent agency relied on? And that's lacking in this case, and it's also highly disputed. There's, like, 15 witnesses all disagreeing about this. All right. Thank you, counsel. You've exceeded your time. Thank you. Thank you to both counsel for your helpful arguments. The case just argued and submitted for a decision by the court.
judges: RAWLINSON, KOH, Fitzwater